# Exhibit A

CROSNER LEGAL, P.C.
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
*Attorneys for Plaintiff and the Proposed Class*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**08/31/2023 at 03:11:15 PM**
By: Milagros Cortez,
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF ALAMEDA**

ISRAEL PELAYO individually, and on behalf of all others similarly situated,

Plaintiff,

v.

CONAGRA BRANDS, INC.

Defendant.

Case No. 23CV042562

**CLASS ACTION COMPLAINT FOR:**

1. Violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, and;

2. Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. Israel Pelayo ("Plaintiff") on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby brings this action against Defendant Conagra Brands, Inc. ("Defendant" or "Conagra"), and upon information and belief and investigation of counsel, alleges as follows:

2. This is a California consumer class action for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").

3. Defendant manufactures, distributes, advertises, markets, and sells a line of canned food products under the Chef Boyardee brand. The Chef Boyardee Products at issue include (1.) Chef Boyardee Beef Ravioli in Pasta Sauce; (2.) Chef Boyardee Mini Ravioli Beef Ravioli in Pasta Sauce; (3.) Chef Boyardee Overstuffed Beef Ravioli in Pasta Sauce; (4.) Chef Boyardee Beefaroni Pasta in Tomato and Meat Sauce; and, (5.) Chef Boyardee Lasagna Pasta in Tomato Sauce Seasoned with Hearty Meat (collectively "the Products" or "Chef Boyardee Products.").

4. The labels for the Products prominently display, in a conspicuous advertising panel at the top of the label, the claim that these Products include "**No Preservatives**."

5. This statement is false. Each of the Products are made with citric acid— a well known preservative used in food products.

6. Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium product that is free from preservatives.

7. Plaintiff, who purchased the Products in California, was deceived by Defendant's unlawful conduct and brings this action on his own behalf and on behalf of California consumers to remedy Defendant's unlawful acts.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to Article VI, Section 10 of the California Constitution and California Code of Civil Procedure § 410.10.

9. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this county. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

10. Venue is proper in this county pursuant to Cal. Civ Code. § 1780(c) because Defendant is doing business in this county as the Products are offered for sale in this county.

## PARTIES

11. Defendant Conagra Brands, Inc. is a Delaware corporation that maintains its principal place of business at 222 W. Merchandise Mart Plaza, Suite 1300, Chicago, Illinois. Defendant is registered to do business in California as entity number 769084. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Chef Boyardee Products.

12. Plaintiff Israel Pelayo is a resident of California. Plaintiff purchased several of the Chef Boyardee Products during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims as set forth below.

## FACTUAL ALLEGATIONS

### "NO PRESERVATIVES" IS PROMINENTLY DISPLAYED ON THE LABELS OF THE PRODUCTS

13. The labels for each of the Chef Boyardee Products prominently state that the Products contain "No Preservatives" thereby misleading reasonable consumers into believing that the Products are free from preservatives. However, each of the Products contain the preservative citric acid. The front and back labels for each of the Products are shown below.

Chef Boyardee Beef Ravioli

CROSNER LEGAL, P.C.

<u>Chef Boyardee Mini Ravioli</u>

“Citric Acid”

Chef Boyardee Overstuffed Beef Ravioli

"Citric Acid"

<u>Chef Boyardee Beefaroni</u>

"Citric Acid"

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

Chef Boyardee Lasagna

NO Artificial Flavors
NO Preservatives
NO Artificial Colors
Chef BOYARDEE
Lasagna
Pasta in Tomato Sauce Seasoned with Hearty Meat
270 Calories

NO Preservatives
NO Artificial Colors
Nutrition Facts
1 can (425g)
INGREDIENTS: TOMATOES (TOMATO PUREE, WATER), WATER, ENRICHED PASTA (DURUM WHEAT SEMOLINA, GLYCEROL MONOSTEARATE, NIACIN, REDUCED IRON, THIAMINE MONONITRATE [VITAMIN B1], RIBOFLAVIN [VITAMIN B2], FOLIC ACID), BEEF, DICED TOMATOES WITH JUICE, HIGH FRUCTOSE CORN SYRUP, LESS THAN 2% OF: SALT, TEXTURED VEGETABLE PROTEIN (SOY FLOUR, CARAMEL COLOR), MODIFIED CORN STARCH, ENZYME MODIFIED CHEESE (CHEDDAR CHEESE [PASTEURIZED MILK, CULTURES, SALT, ENZYMES], WATER, SODIUM PHOSPHATE, XANTHAN GUM), SPICES, CITRIC ACID, FLAVORINGS, SOYBEAN OIL.
CONTAINS: MILK, SOY, WHEAT.
Conagra Brands
Questions or comments, visit us at www.chefboyardee.com or call 1-800-544-5680.

"Citric Acid"

8

CLASS ACTION COMPLAINT

## CITRIC ACID IN THE PRODUCTS IS A PRESERVATIVE

14. The citric acid in the Products is a synthetic preservative. Commercial food manufactures like Defendant use a form of citric acid that is derived from heavy chemical processing.[1] Commercially produced citric acid is manufactured via microbial fermentation with a typically genetically modified type of black mold called *Aspergillus niger*.[2] The black mold is fed into a highly processed and/or genetically modified corn syrup to produce citric acid. Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[3]

15. Citric acid acts as a preservative when added to food products. The Food and Drug Administration ("FDA") defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[4]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

[1] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[2] *Id*; Pau Loke Show, *et al.*, *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[3] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[4] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

16. In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[5]

17. The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties, as shown below[6]:

## Preservatives

Food preservatives are classified into two main groups: antioxidants and antimicrobials. Antioxidants are compounds that delay or prevent the deterioration of foods by oxidative mechanisms. Antimicrobial agents inhibit the growth of spoilage and pathogenic microorganisms in food.

| **Food preservatives** | |
|---|---|
| **chemical agent** | **mechanism of action** |
| **Antioxidants** | |
| **ascorbic acid** | oxygen scavenger |
| **butylated hydroxyanisole (BHA)** | free radical scavenger |
| **butylated hydroxytoluene (BHT)** | free radical scavenger |
| **citric acid** | enzyme inhibitor/metal chelator |
| **sulfites** | enzyme inhibitor/oxygen scavenger |
| **tertiary butylhydroquinone (TBHQ)** | free radical scavenger |
| **tocopherols** | free radical scavenger |

[5] *See* **Exhibit A** attached hereto.

[6] *Preservatives*, BRITANICA, *available at* https://www.britannica.com/topic/food-additive/Preservatives#ref502211

18. The Agricultural Marketing Service of the United States Department of Agriculture has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[7]

19. Several academic journals also note the use of citric acid as a preservative.[8] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh. It does this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[9] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[10]

20. Citric acid acts as a preservative even when present at low levels. It will delay bacterial spoilage, delay changes in color, flavor, and texture of the product. Citric Acid acts to preserve the Products throughout the shelf-life of the Products.[11] Because citric acid lowers the pH of the Products, it functions as a preservative by preventing (or significantly delaying) microorganisms such as mold, bacteria, fungi, and yeast from developing in the Products. Citric acid's antioxidant properties also assist in preservation by sequestrating unwanted compounds

---

[7] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

[8] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION) (2011), *available at* https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, *Use of citric acid in broiler diets,* WORLD'S POULTRY SCIENCE JOURNAL VOL. 68, ISSUE 1 (Feb. 21, 2012), *available at* https://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[9] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23, 2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

[10] *Citric Acid: One of the Most Important Preservatives in The World,* FBC INDUSTRIES, INC. (Feb. 5, 2019), *available at* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

[11] The Products have a shelf life of approximately two years. *See e.g.*, https://www.conagrafoodservice.com/products/chef-boyardee-beef-ravioli-15-oz

CROSNER LEGAL, P.C.

like metal ions from the Products.[12] A basic principle of food preservation is to impose numerous "hurdles" to prevent and delay degradation of the food product.[13] Here, the citric acid in the Products does just that—it acts as a hurdle to unwanted spoilation along with the canning design of the packaging and any heat processing of the Products.

21. Citric acid functions as a preservative in the Chef Boyardee Products because it is added to the Products and prevents and/or delays deterioration of the Products. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[14]

**DEFENDANT'S COMPETITOR'S DO NOT USE THE "NO PRESERVATIVES" REPRESENTATION**

22. Defendant's competitors that include the use of citric acid do not use the deceptive "No Preservatives" labeling claim.

23. The popular Campbell's Spaghettios® contains citric acid. The label does not use the deceptive "No Preservatives" claim:[15]

[12] B.C. Behera, et al. *Microbial citric acid: Production, properties, application, and future perspectives*, FOOD FRONTIERS VOL. 2, 62-76 (Jan. 7, 2021), *available at* https://onlinelibrary.wiley.com/doi/pdf/10.1002/fft2.66

[13] L. Leistner, *Basic aspects of food preservation by hurdle technology*, INTERNATIONAL JOURNAL OF FOOD MICROBIOLOGY, VOL. 55, 181-186 (2000), *available at* *http://envismadrasuniv.org/Physiology/pdf/Basic%20aspects%20of%20food%20preservation.pdf*

[14] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

[15] *See* https://www.target.com/p/spaghettios-original-canned-pasta-15-8oz/-/A-17482486?

CROSNER LEGAL, P.C.



24. Progresso® Lasagna-Style Soup contains citric acid. The label does not use the deceptive "No Preservatives" claim:[16]

[16] *See* https://www.walmart.com/ip/Progresso-Rich-Hearty-Lasagna-Style-Soup-With-Italian-Sausage-Canned-Soup-18-5-oz/529754669?

25. Annie's Bernie O's™ contains citric acid. The label does not use the deceptive "No Preservatives" claim:[17]

Best Ingredients: Water, Organic Pasta (organic wheat flour), Organic Tomato Paste, Organic Cane Sugar, Sea Salt, Organic Corn Starch, Organic Cheddar Cheese (organic cultured pasteurized milk, salt, non-animal enzymes), Citric Acid, Organic Onion Powder, Organic Paprika, Organic Garlic Powder. CONTAINS WHEAT AND MILK INGREDIENTS.

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE "NO PRESERVATIVES" LABELING STATEMENT AND SUFFERED ECONOMIC INJURY**

26. Consumers, like Plaintiff, relied on Defendant's "No Preservatives" labeling statement. The "No Preservatives" statement on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[18]

---

[17] *See* https://www.walmart.com/ip/Annie-s-Organic-Bernie-O-s-Canned-Pasta-in-Tomato-Cheese-Sauce-15-oz/10790932?

[18] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-

CROSNER LEGAL, P.C.

27. Plaintiff and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain a preservative ingredient.

**PLAINTIFF'S PURCHASE OF THE PRODUCTS**

28. Plaintiff Israel Pelayo has purchased the Chef Boyardee Beef Ravioli, the Chef Boyardee Mini Ravioli Beef Ravioli, and the Chef Boyardee Overstuffed Beef Ravioli during the class period. Plaintiff's first purchase of the Products was in approximately 2020 and Plaintiff's last purchase of the Products was in approximately June of 2023. During this time period, Plaintiff would purchase approximately five cans of the Products every month. Plaintiff purchased the Products from Food4Less and Ralph's stores located in California.

29. Plaintiff saw and relied on the "No Preservatives" claim on the labels of the Products. Plaintiff would not have purchased the Products, or would have paid less for the Products, had he known that the products actually contain a preservative ingredient. As a result, Plaintiff suffered injury in fact when he spent money to purchase the Products he would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiff has not purchased the Products after learning that they contain a preservative ingredient. Plaintiff desires to purchase the Products again if the labels of the products were accurate and if the products actually contained "No Preservatives." However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

## NO ADEQUATE REMEDY AT LAW

30. Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

31. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

32. A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as containing "No Preservatives" when the Products actually contain the preservative ingredient citric acid. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain a preservative. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages

caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

33. It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Cal. Code. Civ. Proc. § 382 on behalf of the following Class:

> All persons who purchased the Chef Boyardee Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

35. Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

36. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

CROSNER LEGAL, P.C.

37. The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

39. Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d. Whether Plaintiff and the Class are entitled to injunctive relief;

e. Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

40. Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

41. Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and

experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

42.     The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.     The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.     The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.     When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class Members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

43.     Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby

making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

44. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and the Class members.

45. Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750 *et seq.***

46. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

47. Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

48. At all times relevant hereto, Plaintiff and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

49. At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

50. At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

51. The purchases of the Products by Plaintiff and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

52. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Preservatives." Defendant failed to disclose that the Products contain a preservative

ingredient called citric acid.. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain a preservative to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a) Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b) Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c) Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d) Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

53. Defendant violated the CLRA because the Products were prominently advertised as containing "No Preservatives," but, in reality, the Products contain a preservative ingredient called citric acid. Defendant knew or should have known that consumers would want to know that the Products contain a preservative.

54. Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

55. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

56. Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

57. Pursuant to California Civil Code section 1782, Plaintiff notify Defendant in writing by certified mail of the alleged violations of the CLRA and will demand that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems

associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiff will amend his complaint to seek damages.

58. Pursuant to section 1780(d) of the CLRA, an affidavit showing that this action was commenced in a proper forum is provided at the end of this complaint.

**SECOND CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

59. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

60. Plaintiff brings this claim under the UCL individually and on behalf of the Class against Defendant.

61. The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

62. Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express and implied warranties. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

63. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a

Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain a preservative) of which they had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

64.     Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no preservatives.

65.     Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

66.     Defendant's wrongful business practices and violations of the UCL are ongoing.

67.     Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

68.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

**REQUEST FOR RELIEF**

Plaintiff, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims in this Complaint so triable.

Dated: August 31, 2023

CROSNER LEGAL, P.C.

By: */s/ Michael T. Houchin*
MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

Fax: (310) 510-6429
mhouchin@crosnerlegal.com

*Attorneys for Plaintiff and the Proposed Class*

CROSNER LEGAL, P.C.

25

CLASS ACTION COMPLAINT

**AFFIDAVIT PURSUANT TO CALIFORNIA CIVIL CODE § 1780(D)**

I declare as follows: I am an attorney duly licensed to practice before all of the courts of the State of California. I am an attorney at the law firm of Crosner Legal, P.C., one of the counsel of record for plaintiff in the above-entitled action. Defendant has done, and is doing, business in California, including in this County. Such business includes the marketing, promotion, distribution, and sale of its Products at issue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed August 31, 2023, at San Diego, California.

CROSNER LEGAL, P.C.

By: */s/ Michael T. Houchin*
MICHAEL T. HOUCHIN

# **EXHIBIT A**

**Archived Content**

The content on this page is provided for reference purposes only. This content has not been altered or updated since it was archived.

Search Archive



# Inspections, Compliance, Enforcement, and Criminal Investigations

## Fresh Express Incorporated 10/6/10



Department of Health and Human Services

Public Health Service
Food and Drug Administration
San Francisco District
1431 Harbor Bay Parkway
Alameda. CA 94502-7070
Telephone: 510/337-6700

**WARNING LETTER**

**Via UPS**

October 6, 2010

Fernando Aguirre, President and CEO
Chiquita Brands International, Inc. and Fresh Express, Incorporated
250 East Fifth Street
Cincinnati, OR 45202

Dear Mr. Aguirre:

Starting on May 21, 2010 and ending on June 10, 2010, the Food and Drug Administration (FDA) inspected your food manufacturing facility located at 900 E. Blanco Road, Salinas, California. During this inspection, FDA investigators collected labels for your products and reviewed their labeling at http://www.chiquita.com[1]. Based on our review, we have concluded that your Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" products are misbranded in violation of the Federal Food, Drug, and Cosmetic Act (the Act) and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101). You can find the Act and FDA regulations through links at FDA's Internet home page at http://www.fda.gov[2].

Specifically, your "Pineapple Bites with Coconut" product is misbranded within the meaning of Section 403(a) of the Act [21 U.S.C. § 343(a)] in that its statement of identity, "Pineapple Bites with Coconut", is false and misleading. The ingredient statement for this product states that it is made with coconut; however, our investigation determined that this product is made with a coconut flavor spray. The characterizing flavor of your Pineapple with Coconut product must be identified in accordance with 21 CFR 101.22(i)(1)(iii) (for example. "coconut flavor").

Your "Pineapple Bites" and "Pineapple Bites with Coconut" products are misbranded within the meaning of Section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)] because their labeling bears nutrient content claims but the products do not meet the requirements for the claims.
Specifically, their labeling includes the claim "Plus ... Antioxidants." However, this claim does not include the names of the nutrients that are the subject of the claim or, alternatively, link the term "antioxidants" by a symbol (e.g., an asterisk) that refers to the same symbol that appears elsewhere on the same panel of the product label, followed by the name or names of the nutrients with recognized antioxidant activity. 21 CFR 101.54(g)(4). Your use of this antioxidant claim therefore misbrands your products under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)].

Your "Pineapple Bites" and "Pineapple Bites with Coconut" products also bear the claim "Plus Phytonutrients." "Phytonutrients" are not nutrients for which a recommended daily intake (RDI) or daily recommended value (DRV) has been established. Therefore, nutrient content claims regarding "phytonutrients" are not authorized and further misbrand your products under section 403(r)(2)(A)(i) of the Act [21 U.S.C. § 343(r)(2)(A)(i)]. To the extent phytonutrients are intended to be the basis for an antioxidant nutrient content claim, that use would violate FDA regulations for the same reason and because phytonutrients are not recognized as having antioxidant activity. 21 CFR 101.54(g)(1) and (2).

Both your "Pineapple Bites" and "Pineapple Bites with Coconut" products also bear the statement "Only 40 Calories." This statement implies that the products are "low calorie" foods. A "low calorie" claim may be made if a food with a reference amount customarily consumed (RACC) greater than 30 grams (g) or greater than 2 tablespoons does not provide more than 40 calories per RACC. 21 CFR 101.60(b)(2)(i)(A). The RACC established for pineapple is 140 g. See 21 CFR 101.12(b) (Table 2, Fruits and Fruit Juices, All other fruits fresh, canned, or frozen).
The nutrition information for both products states that there are 40 calories per 1 piece (80 g) of product; this equals about 70 calories per RACC. Therefore, under 21 CFR 101.13(i)(2), the products are required t carry a disclaimer adjacent to the claim, e.g., "Only 40 calories per serving, not a low calorie food". Because your products fail to bear the required disclaimer, they are misbranded within the meaning of section 403(r)(1)(A) of the Act.

The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22. Further, the ingredients ascorbic acid and citric acid must be declared by their common or usual names. 21 CFR 101.4(a).

This letter is not intended to be an all-inclusive review of your firm's products and processes. It is your responsibility to ensure that your firm and your products comply with the Act and FDA, regulations. You should take prompt action to correct the violations. Failure to promptly correct these violations may resul in regulatory action without further notice. For instance, we may take further action to seize your product or enjoin your firm from operating.

We also note that, FDA (through its contractor) obtained two samples of Fresh Express Hearts of Romaine the testing of which yielded human pathogens. One sample was found to contain *Salmonella Anatum*; another sample was found to contain *E. coli 0157:H7*. We acknowledge that you issued letters to your customers in an effort to recall affected products. However, FDA recommends that you review your firm's criteria for receipt of raw product, your procedures for ensuring that wash, flume and processing water dc not contaminate your products and any other conditions and practices that may relate to the cause of the contamination.

We further acknowledge your June 25, 2010 response to the Good Manufacturing Practices violations cited in the FDA Form 483 regarding this inspection. In your response, you committed to:

- Retrain employees to replace or sanitize their gloves after contacting unsanitized surfaces;
- Include the dryer hoist controls and the equipment control panels that involve direct employee contact in your daily wash and sanitation procedures;
- Create a new storage system for aprons, gloves, and sleeve guards for times during manufacturing when they are not in use; and
- Modify your cutting surface inspection and replacement program so that cutting surfaces will be changed after every **(b)(4)** of use.

However, you did not provide documentation to demonstrate that these corrections have been made. You also did not address the observation that your technician improperly read the free chlorine indicator tests in the flume water. Please provide this information and documentation in your response to this Warning Letter.

In addition to the labeling issues identified above, we note that the available labeling space is at least 6" in height; therefore, the size of the nutrition information declared on these packages is not appropriate and does not meet the formatting requirements under 21 CFR 101.9(d), including hairline and footnote requirements. We note that since some of the nutrients are at insignificant levels, a shortened version of the Nutrition Facts panel may be used, e.g., the statement "Not a significant source of dietary fiber", at the bottom of the table of nutrient values as allowed under 21 CFR 101.9(c).

Please notify this office in writing within fifteen (15) working days from the date you receive this letter of

the specific steps you have taken to correct the noted violations, including an explanation of how you plan to prevent these violations, or similar violations, from occurring again. Please include documentation of the corrective actions you have taken. If your planned corrections will occur over time, please include a timetable for implementation of those corrections. If corrective action cannot be completed within 15 working days, state the reason for the delay and the time within which the corrections will be completed.

Your response should be sent to:

Darlene B. Almogela
Director of Compliance
United States Food and Drug Administration
1431 Harbor Bay Parkway
Alameda, CA 94502

If you have any questions about the content of this letter please contact Sergio Chavez, Compliance Officer, at 510-337-6886.

/s/

Barbara Cassens
District Director

Page Last Updated: 10/08/2010
Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Accessibility Contact FDA Careers FDA Basics FOIA No Fear Act Site Map Transparency Website Policies

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Email FDA

USA.gov

For Government For Press

Combination Products Advisory Committees Science & Research Regulatory Information Safety Emergency Preparedness International Programs News & Events Training and Continuing Education Inspections/Compliance State & Local Officials Consumers Industry Health Professionals FDA Archive

U.S. Department of **Health & Human Services**

**Links on this page:**

1. http://www.chiquita.com/
2. http://www.fda.gov