CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL PELAYO and HOPE KAMBICK individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONAGRA BRANDS, INC.,<br><br>Defendant. | Case No. 3:23-cv-05833-JD<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CROSNER LEGAL, P.C.

## INTRODUCTION

1.      Israel Pelayo and Hope Kambick ("Plaintiffs") on behalf of themselves, all others similarly situated, and the general public, by and through their undersigned counsel, hereby bring this action against Defendant Conagra Brands, Inc. ("Defendant" or "Conagra"), and upon information and belief and investigation of counsel, allege as follows:

2.      This is a California consumer class action for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and for breach of express warranty.

3.      Defendant manufactures, distributes, advertises, markets, and sells a line of canned food products under the Chef Boyardee brand. The Chef Boyardee Products at issue include (1.); Chef Boyardee Mac & Cheese Pasta in Cheese Flavored Sauce; (2.) Chef Boyardee Mini ABC's and 123's Pasta in Tomato and Cheese Sauce; (3.) Chef Boyardee Pasta in Butter Sauce; and (4.) Chef Boyardee Spaghetti in Tomato Sauce. (collectively "the Products" or "Chef Boyardee Products.").

4.      The labels for the Products prominently display, in a conspicuous advertising panel at the top of the label, the claim that these Products include "**No Artificial Preservatives**."

5.      This statement is false. The Products contain citric acid—an artificial preservative used in food products.

6.      Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium product that is free from artificial preservatives.

7.      Plaintiffs, who purchased the Products in California, were deceived by Defendant's unlawful conduct and bring this action on their own behalf and on behalf of California consumers to remedy Defendant's unlawful acts.

## JURISDICTION AND VENUE

8.      On November 13, 2023, Defendant removed this action from the California Superior Court for the County of Alameda to this Court pursuant to 28 U.S.C. § 1446 and 28

U.S.C. § 1453 (Dkt. No. 1). Defendant asserts in its Notice of Removal that this court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

9.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this District. The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiffs. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiffs' claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiffs and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiffs and the Class that Defendant knows is likely to be suffered by Californians.

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) because Defendant removed this action from the California Superior Court for the County of Alameda.

**PARTIES**

11.    Defendant Conagra Brands, Inc. is a Delaware corporation that maintains its principal place of business at 222 W. Merchandise Mart Plaza, Suite 1300, Chicago, Illinois. Defendant is registered to do business in California as entity number 769084. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Chef Boyardee Products.

12.    Plaintiff Israel Pelayo is a resident of California. Plaintiff Pelayo purchased one of the Chef Boyardee Products during the class period in California. Plaintiff relied on Defendant's deceptive advertising and labeling claims as set forth below.

13.     Plaintiff Hope Kambick is a resident of California. Plaintiff Kambick purchased several of the Chef Boyardee Products during the class period in California. Plaintiff Kambick relied on Defendant's deceptive advertising and labeling claims as set forth below.

<u>FACTUAL ALLEGATIONS</u>

**"NO ARTIFICIAL PRESERVATIVES" IS PROMINENTLY DISPLAYED ON THE LABELS OF THE PRODUCTS**

14.     The labels for each of the Chef Boyardee Products prominently state that the Products contain "No Artificial Preservatives" thereby misleading reasonable consumers into believing that the Products are free from artificial preservative ingredients. However, each of the Products contain the artificial preservative ingredient citric acid.  The front and back labels for each of the Products are shown below.

<u>Chef Boyardee Mac & Cheese Pasta in Cheese Flavored Sauce</u>




CROSNER LEGAL, P.C.

FIRST AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.

Chef Boyardee Mini ABC's and 123's Pasta in Tomato and Cheese Sauce



Chef Boyardee Pasta in Butter Sauce



Chef Boyardee Spaghetti in Tomato Sauce



CROSNER LEGAL, P.C.

### CITRIC ACID IN THE PRODUCTS IS AN ARTIFICIAL PRESERVATIVE

15.     The citric acid in the Products is an artificial preservative. Commercial food manufactures, like Defendant, use a form of citric acid that is derived from heavy chemical processing.[1] Commercially produced citric acid is manufactured via microbial fermentation with a typically genetically modified type of black mold called *Aspergillus niger.*[2] The black mold is fed into a highly processed and/or genetically modified corn syrup to produce citric acid. Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[3]

16.     Citric acid acts as a preservative when added to food products. The Food and Drug Administration ("FDA") defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[4]

---

[1] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[2] *Id*; Pau Loke Show, *et al.*, *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653; *see also* 21 C.F.R. 173.280 ("Solvent extraction process for citric acid")

[3] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[4] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

---

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

17.     In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[5]

18.     The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties, as shown below[6]:

## Preservatives

Food preservatives are classified into two main groups: antioxidants and antimicrobials. Antioxidants are compounds that delay or prevent the deterioration of foods by oxidative mechanisms. Antimicrobial agents inhibit the growth of spoilage and pathogenic microorganisms in food.

| Food preservatives | |
|---|---|
| chemical agent | mechanism of action |
| **Antioxidants** | |
| ascorbic acid | oxygen scavenger |
| butylated hydroxyanisole (BHA) | free radical scavenger |
| butylated hydroxytoluene (BHT) | free radical scavenger |
| citric acid | enzyme inhibitor/metal chelator |
| sulfites | enzyme inhibitor/oxygen scavenger |
| tertiary butylhydroquinone (TBHQ) | free radical scavenger |
| tocopherols | free radical scavenger |

[5] *See* **Exhibit A** attached hereto.

[6] *Preservatives*, BRITANICA, *available at* https://www.britannica.com/topic/food-additive/Preservatives#ref502211

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

19.     The Agricultural Marketing Service of the United States Department of Agriculture has also recognized the use of citric acid as a preservative stating that "Citric acid has a wide variety of uses, some of which can provide preservative functions, primarily though lowering the pH of the food."[7]

20.     The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "[s]ome common chemical preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[8]

21.     Several academic journals also note the use of citric acid as a preservative.[9] Indeed, "Citric acid acts as a preservative in many processed foods, keeping them fresh. It does this by slowing or helping prevent the formation of bacteria, mold, yeast, and fungus."[10] "Today, citric acid is one of the most common and widely-used preservatives in the world[.]"[11]

22.     Citric acid acts as a preservative even when present at low levels. It will delay bacterial spoilage, delay changes in color, flavor, and texture of the product. Citric Acid acts to preserve the Products throughout the shelf-life of the Products.[12] Because citric acid lowers the

---

[7] *Citric Acid and Salts*, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf.

[8] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf

[9] K. Kirimura, et al., *Citric Acid*, COMPREHENSIVE BIOTECHNOLOGY (SECOND EDITION) (2011), *available at* https://www.sciencedirect.com/science/article/abs/pii/B9780080885049001690?via%3Dihub; K.M.S. Islam, *Use of citric acid in broiler diets,* WORLD'S POULTRY SCIENCE JOURNAL VOL. 68, ISSUE 1 (Feb. 21, 2012), *available at* https://www.cambridge.org/core/journals/world-s-poultry-science-journal/article/abs/use-of-citric-acid-in-broiler-diets/DA15C2C1F90667525BF2414DF3BFF646 ("Citric Acid (CA) is a weak organic acid which is a natural preservative and can add an acidic or sour taste to foods and soft drinks.").

[10] *What is citric acid, and what is it used for?,* MEDICAL NEWS TODAY (July 23, 2021), *available at* https://www.medicalnewstoday.com/articles/citric-acid

[11] *Citric Acid: One of the Most Important Preservatives in The World,* FBC INDUSTRIES, INC. (Feb. 5, 2019), *available at* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/

[12] The Products have a shelf life of approximately two years. *See e.g.*, https://www.conagrafoodservice.com/products/chef-boyardee-beef-ravioli-15-oz

pH of the Products, it functions as a preservative by preventing (or significantly delaying) microorganisms such as mold, bacteria, fungi, and yeast from developing in the Products. Citric acid's antioxidant properties also assist in preservation by sequestrating unwanted compounds like metal ions from the Products.[13] A basic principle of food preservation is to impose numerous "hurdles" to prevent and delay degradation of the food product.[14] Here, the citric acid in the Products does just that—it acts as a hurdle to unwanted spoilage along with the canning design of the packaging and any heat processing of the Products.

23. Citric acid functions as a preservative in the Chef Boyardee Products because it is added to the Products and prevents and/or delays deterioration of the Products. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends to* prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or *has the power of preserving*.") (emphasis added).[15]

**REASONABLE CONSUMERS ARE DECEIVED BY DEFENDANT'S FALSE "NO ARTIFICIAL PRESERVATIVES" LABELING STATEMENT AND SUFFERED ECONOMIC INJURY**

24. Consumers, like Plaintiffs, relied on Defendant's "No Artificial Preservatives" labeling statement. The "No Artificial Preservatives" statement on the labels of the Products is material to reasonable consumers. "[F]oods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed

---

[13] B.C. Behera, et al. *Microbial citric acid: Production, properties, application, and future perspectives*, FOOD FRONTIERS VOL. 2, 62-76 (Jan. 7, 2021), *available at* https://onlinelibrary.wiley.com/doi/pdf/10.1002/fft2.66

[14] L. Leistner, *Basic aspects of food preservation by hurdle technology*, INTERNATIONAL JOURNAL OF FOOD MICROBIOLOGY, VOL. 55, 181-186 (2000), *available at* http://envismadrasuniv.org/Physiology/pdf/Basic%20aspects%20of%20food%20preservation.pdf

[15] *Preservative,* MERRIAM-WEBSTER'S DICTIONARY, *available at* https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld

CROSNER LEGAL, P.C.

foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[16]

25.     Plaintiffs and the putative class members suffered economic injury as a result of Defendant's actions. Plaintiffs and putative class members spent money that, absent Defendant's actions, they would not have spent. Plaintiffs and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely labeled and advertised. Consumers, including Plaintiffs, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain a preservative ingredient.

**PLAINTIFFS' PURCHASE OF THE PRODUCTS**

26.     Plaintiff Israel Pelayo has purchased the Chef Boyardee Spaghetti in Tomato Sauce during the class period. Plaintiff Pelayo's first purchase of the Product was in approximately January of 2023 and Plaintiff Pelayo's last purchase of the Product was in approximately June of 2023. Plaintiff Pelayo purchased the Product from retail stores in California, including Food4Less and Ralph's.

27.     Plaintiff Hope Kambick has purchased the Chef Boyardee Mac & Cheese Pasta in Cheese Flavored Sauce, Chef Boyardee Mini ABC's and 123's Pasta in Tomato and Cheese Sauce, Chef Boyardee Pasta in Butter Sauce, and Chef Boyardee Spaghetti in Tomato Sauce Products during the class period. Plaintiff Kambick began purchasing the Products beginning in approximately 2022 and continuing until approximately fall of 2023. Plaintiff Kambick purchased the Products from retail stores in California, including Target and Winco.

---

[16] *84% of Americans buy "free-from" foods because they believe them to be more natural or less processed*, Mintel (Sept. 3, 2015), *available at* https://www.mintel.com/press-centre/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed/

CROSNER LEGAL, P.C.

28.     Plaintiffs saw and relied on the "No Artificial Preservatives" claim on the labels of the Products.  Plaintiffs would not have purchased the Products, or would have paid less for the Products, had they known that the products actually contain an artificial preservative ingredient. As a result, Plaintiffs suffered injury in fact when they spent money to purchase the Products they would not have purchased, or would have paid less for, absent Defendant's misconduct. Plaintiffs desire to purchase the Products again if the labels of the products were accurate and if the products actually contained "No Artificial Preservatives." However, as a result of Defendant's ongoing misrepresentations, Plaintiffs are unable to rely on the Products' advertising and labeling when deciding in the future whether to purchase the Products.

### NO ADEQUATE REMEDY AT LAW

29.     Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

30.     The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the product labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiffs and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

31.     A primary litigation objective in this litigation is to obtain injunctive relief. Injunctive relief is appropriate on behalf of Plaintiffs and members of the class because Defendant continues to misrepresent the Products as containing "No Artificial Preservatives" when the Products actually contain the preservative ingredient citric acid. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Injunctive relief, in the form of affirmative disclosures or halting the sale of unlawful sold products is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements stating that the Products actually contain an artificial preservative. An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiffs' investigation has not yet completed, rendering injunctive relief necessary. Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

32.     It is premature to determine whether an adequate remedy at law exists. This is an initial pleading and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following Class:

All persons who purchased the Chef Boyardee Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

34.     Excluded from the class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

35.     Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate subclasses, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

36.     The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

38.     Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c.     Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d.     Whether Plaintiffs and the Class are entitled to injunctive relief;

e.     Whether Plaintiffs and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

39.     <u>Typicality</u>: Plaintiffs are members of the Class that Plaintiffs seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

40.     <u>Adequacy</u>: Plaintiffs are adequate Class representatives because Plaintiffs' interests do not conflict with the interests of the Class Members Plaintiffs seek to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiffs have a strong interest in vindicating the rights of the class; Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs intend to vigorously prosecute this action. Plaintiffs have no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiffs and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiffs and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

41.     The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.     The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.     The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

c.     When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.     Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.     This class action will assure uniformity of decisions among Class Members;

g.     The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

h.     Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

42.     Additionally or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

43.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiffs and the Class members.

44.     Unless the Class is certified, Defendant will retain monies that were taken from Plaintiffs and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF

### Violation of California's Consumers Legal Remedies Act

### Cal. Civ. Code § 1750 *et seq.*

45.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

46.     Plaintiffs bring this claim under the CLRA individually and on behalf of the Class against Defendant.

47.    At all times relevant hereto, Plaintiffs and the members of the Class were "consumer[s]," as defined in California Civil Code section 1761(d).

48.    At all relevant times, Defendant was a "person," as defined in California Civil Code section 1761(c).

49.    At all relevant times, the Products manufactured, marketed, advertised, and sold by Defendant constituted "goods," as defined in California Civil Code section 1761(a).

50.    The purchases of the Products by Plaintiffs and the members of the Class were and are "transactions" within the meaning of California Civil Code section 1761(e).

51.    Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products contain "No Artificial Preservatives." Defendant failed to disclose that the Products contain an artificial preservative ingredient called citric acid. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain an artificial preservative to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a)    Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b)    Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

c)    Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d)    Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

52.    Defendant violated the CLRA because the Products were prominently advertised as containing "No Artificial Preservatives," but, in reality, the Products contain an artificial preservative ingredient called citric acid. Defendant knew or should have known that consumers would want to know that the Products contain an artificial preservative.

CROSNER LEGAL, P.C.

53.     Defendant's actions as described herein were done with conscious disregard of Plaintiffs' and the Class members' rights and were wanton and malicious.

54.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

55.     Pursuant to California Civil Code section 1782(d), Plaintiffs and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

56.     Pursuant to California Civil Code section 1782, Plaintiffs will notify Defendant in writing by certified mail of the alleged violations of the CLRA and will demand that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed herein and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, then Plaintiffs will amend their complaint to seek damages.

57.     Pursuant to section 1780(d) of the CLRA, an affidavit showing that this action was commenced in a proper forum is provided at the end of this complaint.

**SECOND CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

58.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

59.     Plaintiffs bring this claim under the UCL individually and on behalf of the Class against Defendant.

60.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

61.     Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of

CROSNER LEGAL, P.C.

California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. § 17500, *et seq.*, 21 U.S.C. § 343(a), Health & Saf. Code § 110100,[17] and by breaching express and implied warranties. Plaintiffs, individually and on behalf of the other Class members, reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

62.     Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiffs and the members of the a Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiffs and the other Class members paid for Products that are not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products contain an artificial preservative) of which they had exclusive knowledge. While Plaintiffs and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

63.     Defendant committed "fraudulent" business acts or practices by making the representations of material fact regarding the Products set forth herein. Defendant's business practices as alleged are "fraudulent" under the UCL because they are likely to deceive customers into believing the Products actually contain no artificial preservatives.

---

[17] The federal regulations at issue are specifically incorporated into California law through the Sherman Food, Drug, and Cosmetic Law ("Sherman Law").

CROSNER LEGAL, P.C.

64. Plaintiffs and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiffs and the other members of the Class, each of whom purchased Defendant's Products. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

65. Defendant's wrongful business practices and violations of the UCL are ongoing.

66. Plaintiffs and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class seek interest in an amount according to proof.

67. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiffs, individually and on behalf of the Class, seek (1) restitution from Defendant of all money obtained from Plaintiffs and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

**THIRD CLAIM FOR RELIEF**

**Breach of Express Warranty**

68. Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

69. Plaintiffs bring this claim for breach of express warranty individually and on behalf of the Class against Defendant.

70. As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products contain "No Artificial Preservatives."

CROSNER LEGAL, P.C.

71.     Plaintiffs and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representation that the Products contain "No Artificial Preservatives."

72.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class.

73.     In fact, the Products do not conform to Defendant's representations because the Products contain an artificial preservative ingredient called citric acid. By falsely representing the Products in this way, Defendant breached express warranties.

74.     Plaintiffs relied on Defendant's (the manufacturer) representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

75.     As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class were injured because they: (1) paid money for the  Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the  Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the   Products they purchased had less value than if Defendant's representations about the characteristics of the   Products were truthful. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class Members would not have purchased the Products or would not have paid as much as they did for them.

**REQUEST FOR RELIEF**

Plaintiffs, individually, and on behalf of all others similarly situated, request for relief pursuant to each claim set forth in this complaint, as follows:

a.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class Representatives and appointing the undersigned counsel as Class Counsel;

CROSNER LEGAL, P.C.

1      b.      Ordering restitution and disgorgement of all profits and unjust enrichment that

2  Defendant obtained from Plaintiffs and the Class members as a result of Defendant's unlawful,

3  unfair, and fraudulent business practices;

4      c.      Ordering injunctive relief as permitted by law or equity, including enjoining

5  Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to

6  engage in a corrective advertising campaign;

7      d.      Ordering damages in amount which is different than that calculated for restitution

8  for Plaintiffs and the Class;

9      e.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and

10  the other members of the Class;

11      f.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts

12  awarded; and

13      g.      Ordering such other and further relief as may be just and proper.

14  **JURY DEMAND**

15      Plaintiffs hereby demand a trial by jury of all claims in this Complaint so triable.

16

17  Dated: December 4, 2023              CROSNER LEGAL, P.C.

18

19                           By:    */s/ Michael T. Houchin*

                                 MICHAEL T. HOUCHIN

20                           9440 Santa Monica Blvd. Suite 301

21                           Beverly Hills, CA 90210
                         Tel: (866) 276-7637

22                           Fax: (310) 510-6429
                         mhouchin@crosnerlegal.com

23                           *Attorneys for Plaintiffs and the Proposed Class*

24

25

26

27

28

**AFFIDAVIT PURSUANT TO CALIFORNIA CIVIL CODE § 1780(D)**

I declare as follows: I am an attorney duly licensed to practice before all of the courts of the State of California. I am an attorney at the law firm of Crosner Legal, P.C., one of the counsel of record for the plaintiffs in the above-entitled action. Defendant has done, and is doing, business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of its Products at issue.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed December 4, 2023, at San Diego, California.

CROSNER LEGAL, P.C.

By:     */s/ Michael T. Houchin*
        MICHAEL T. HOUCHIN

CROSNER LEGAL, P.C.

FIRST AMENDED CLASS ACTION COMPLAINT