CROSNER LEGAL, P.C.
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISRAEL PELAYO and HOPE KAMBICK, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>CONAGRA BRANDS, INC.,<br><br>               Defendant. | Case No. 3:23-cv-05833-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: May 16, 2024<br>Time: 10:00 a.m.<br>Court: 11<br>Judge: Hon. James Donato |

1

## TABLE OF CONTENTS

2   I.      INTRODUCTION ................................................................................................. 1

3   II.     BACKGROUND .................................................................................................. 2

4   III.    LEGAL STANDARD............................................................................................ 4

5   IV.     ARGUMENT ....................................................................................................... 5

6           A.      Plaintiffs Sufficiently Allege that the Citric Acid in the Products Is an

7                   Artificial Preservative ............................................................................... 5

8           B.      Plaintiffs Sufficiently Allege that Reasonable Consumers Are Deceived by

9                   the "No Artificial Preservatives" Label Claim ......................................... 9

10                  1.      Plaintiff Plausibly Alleges that Citric Acid Produced with

11                          Aspergillus Niger Is Artificial................................................... 9

12                  2.      Plaintiffs Plausibly Allege that Using Artificial Citric Acid in

13                          Products Labeled as Containing "No Artificial Preservatives"

14                          Would Deceive Reasonable Consumers.................................... 11

15                  3.      Reasonable Consumers Would Share Plaintiffs' Beliefs About the

16                          Label Statements ...................................................................... 14

17  V.      CONCLUSION................................................................................................... 15

18

19

20

21

22

23

24

25

26

27

28

*Pelayo et al. v. Conagra Brands, Inc.,* Case No. 3:23-cv-05833-JD
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Cases**

*Allred v. Frito-Lay N. Am., Inc.*,
  2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ............................................................. 7

*Allred v. Kellogg Co.*,
  2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) ....................................................... 2, 7, 8

*Appling v. Serv. Mgmt. Sys., Inc.*,
  2007 WL 127973 (E.D. Cal. Jan. 12, 2007) ............................................................ 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................... 4

*Augustine v. Talking Rain Beverage Co., Inc.*,
  386 F. Supp. 3d 1317 (S.D. Cal. 2019) ................................................................... 13

*Ault v. J.M. Smucker Co.*,
  2014 WL 1998235 (S.D.N.Y. May 15, 2014) ............................................................ 9

*Baines v. Nature's Bounty (NY), Inc.*,
  2023 WL 8538172 (2d Cir. Dec. 11, 2023) ............................................................ 12

*Bates v. Kashi Co.*,
  2012 WL 12847001 (S.D. Cal. July 16, 2012) ....................................................... 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 4

*Boone v. PepsiCo, Inc.*,
  653 F. Supp. 3d 635 (E.D. Mo. 2023) ...................................................................... 7

*Brazil v. Dole Packaged Foods, LLC*,
  660 F. App'x 531 (9th Cir. 2016) .......................................................................... 1, 6

*Burchfield v. Corel Corp.*,
  2013 WL 12120088 (N.D. Cal. Sept. 12, 2013) ..................................................... 14

*Daly v. Glanbia Performance Nutrition, Inc.*,
  2023 WL 5647232 (N.D. Ill. Aug. 31, 2023) ............................................................ 7

-ii-

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ................................................................................... 15

*Gabriele v. ConAgra Foods, Inc.*,
  2015 WL 3904386 (W.D. Ark. June 25, 2015) ........................................................ 2, 8

*Hayes v. Gen. Mills, Inc.*,
  2021 WL 3207749 (N.D. Ill. July 29, 2021) ............................................................. 13

*Hilsley v. Gen. Mills, Inc.*,
  376 F. Supp. 3d 1043 (S.D. Cal. 2019) ...................................................................... 7

*Holve v. McCormick & Co., Inc.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) ...................................................................... 7

*Iglesias v. Arizona Beverages USA, LLC*,
  2023 WL 4053803 (N.D. Cal. June 16, 2023) ........................................................... 8

*Kubilius v. Barilla Am., Inc.*,
  2019 WL 2861886 (N.D. Ill. July 2, 2019) ................................................................ 2

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ................................................................................... 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ................................................................................... 5

*Mason v. Reed's Inc.*,
  515 F. Supp. 3d 135 (S.D.N.Y. 2021) .............................................................. 1, 6, 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ................................................................................... 4

*Morales v. Kraft Foods Grp., Inc.*,
  2016 WL 11743532 (C.D. Cal. Dec. 2, 2016) ........................................................... 9

*Noohi v. Kraft Heinz Co.*,
  2020 WL 5554255 (C.D. Cal. July 20, 2020) ........................................................ 7, 8

*Osborne v. Kraft Foods Grp., Inc.*,
  No. 15-cv-02653-VC (N.D. Cal. Oct. 15, 2015) ....................................................... 8

-iii-

*Quiroz v. Beaverton Foods, Inc.*,

   2019 WL 1473088 (E.D.N.Y. Mar. 31, 2019) ........................................................................ 2

*Reid v. Johnson & Johnson*,

   780 F.3d 952 (9th Cir. 2015) ..................................................................................................... 9

*Segedie v. Hain Celestial Grp., Inc.*,

   2015 WL 2168374 (S.D.N.Y. May 7, 2015) ............................................................................. 9

*Simeone v. T. Marzetti Co.*,

   2023 WL 2665444 (S.D.N.Y. Mar. 28, 2023) .......................................................................... 2

*Stardock Sys., Inc. v. Reiche*,

   2019 WL 8333514 (N.D. Cal. May 14, 2019) ........................................................................ 15

*Stewart v. Kodiak Cakes, LLC*,

   537 F. Supp. 3d 1103 (S.D. Cal. 2021) ................................................................................... 13

*Tarzian v. Kraft Heinz Foods Co.*,

   2019 WL 5064732 (N.D. Ill. Oct. 10, 2019) ............................................................................ 8

*Tatum v. Kraft Heinz Co.*,

   2023 WL 5804252 (N.D. Ill. Sept. 7, 2023) ........................................................................... 13

*Troncoso v. TGI Friday's Inc.*,

   2020 WL 3051020 (S.D.N.Y. June 8, 2020) ............................................................................ 8

*Williams v. Gerber Prod. Co.*,

   552 F.3d 934 (9th Cir. 2008) ................................................................................................ 2, 9

**Statutes**

Cal. Bus. & Prof. Code § 17200 *et seq.* ......................................................................................... 4

Cal. Civ. Code § 1750 ..................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 4, 5

Fed. R. Civ. P. 15(a)(2) ................................................................................................................ 15

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 4

-iv-

*Pelayo et al. v. Conagra Brands, Inc.,* Case No. 3:23-cv-05833-JD
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**Regulations**

21 C.F.R. § 173.280 ................................................................................................ 10, 11

21 C.F.R. § 184.1033(a) ............................................................................................. 10

7 C.F.R. § 205.605(a) ................................................................................................. 10

88 FR 2798-01 ........................................................................................................... 14

9 CFR § 412.1(e)(2)(ii) ............................................................................................... 14

1

**STATEMENT OF ISSUES TO BE DECIDED**

2       1.      Whether Plaintiffs adequately allege that citric acid produced by heavy chemical

3  processing and via microbial fermentation with a typically genetically modified type of black mold

4  called *Aspergillus niger* found in the Chef Boyardee Products is artificial?

5       2.      Whether Plaintiffs adequately allege that reasonable consumers would be misled

6  by the "No Artificial Preservatives" label statement on the Chef Boyardee Products when the

7  Products actually contain an artificial preservative ingredient?

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Pelayo et al. v. Conagra Brands, Inc.,* Case No. 3:23-cv-05833-JD
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## I. **INTRODUCTION**

Defendant Conagra Brands, Inc. ("Defendant" or "Conagra") exploits consumers' increased interest in more nutritious products free of artificial additives, and willingness to pay more for such products, by representing to consumers that certain Chef Boyardee brand products ("the Products") contain "No Artificial Preservatives." But the Products contain artificial citric acid, which is recognized by the Food and Drug Administration ("FDA"), the United States Department of Agriculture ("USDA"), and several academic journals as a preservative ingredient. *See* Plaintiff's First Amended Complaint, ECF No. 13 ("FAC") ¶¶ 16-33.

Conagra does not contest that citric acid functions as a preservative. Instead, Conagra's main argument is that Plaintiffs Israel Pelayo and Hope Kambick ("Plaintiffs") fail to plausibly allege an actionable misrepresentation under Federal Rule of Civil Procedure 8 because Plaintiffs have failed to plead any facts in support of their contention that the citric acid in the Products is actually artificial. *See* Defendant's Motion to Dismiss, ECF No. 26 ("MTD") at 4-15. However, Conagra's assertions are flatly contradicted by the allegation in the FAC. Plaintiffs' FAC expressly pleads that "[t]he citric acid in the Products is an artificial preservative." FAC ¶ 15. Specifically, Plaintiffs allege that Conagra uses "a form of citric acid that is derived from heavy chemical processing" and that this type of citric acid "is manufactured via microbial fermentation with a typically genetically modified type of black mold called *Aspergillus niger*." *Id*. Furthermore, "[t]he black mold is fed into a highly processed and/or genetically modified corn syrup to produce citric acid." *Id*. As such, the statements on the labels of the Products that they contain "No Artificial Preservatives" are untrue and Plaintiffs therefore satisfy the Rule 8 pleadings standard.

Several courts, including the Ninth Circuit Court of Appeals, have found it plausible that citric acid produced from *Aspergillus niger* fermentation is an artificial ingredient. *See, e.g.*, *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533 (9th Cir. 2016) (reversing a grant of summary judgment and holding that evidence could "allow a trier of fact to find that the synthetic citric and ascorbic acids in Dole's products were not 'natural.'"); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (noting that FDA warning letters "suggest that citric acid, as produced by *Aspergillus Niger*, makes an 'All-Natural' label misleading."); *Gabriele v. ConAgra*

1    *Foods, Inc.*, 2015 WL 3904386, at *4 (W.D. Ark. June 25, 2015) (accepting as true the plaintiff's

2    allegations "that the products contain *artificially* derived citric acid or calcium chloride, in

3    contravention of federal regulations.").

4        Conagra's other arguments are equally unavailing. Plaintiffs' FAC adequately alleges that

5    the "No Artificial Preservatives" labeling statement is likely to mislead a reasonable consumer.

6    FAC ¶¶ 24-25. Moreover, whether a labeling statement is likely to deceive a reasonable consumer

7    "will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams*

8    *v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (alteration in original). Likewise, whether

9    the citric acid in the Products is artificial and whether it functions as a preservative is not

10   appropriate for decision at the motion to dismiss stage. *See, e.g., Allred v. Kellogg Co.*, 2018 WL

11   1158885, at *2 (S.D. Cal. Feb. 23, 2018) ("At this stage, the Court cannot look beyond the

12   pleadings and must take reasonable allegations as true. Both of these hurdles are appropriate for

13   summary judgment, but at this stage, the Court finds [plaintiff] has sufficiently pled the ingredients

14   are artificial and used as flavoring agents."); *Simeone v. T. Marzetti Co.*, 2023 WL 2665444, at *6

15   (S.D.N.Y. Mar. 28, 2023) (denying motion to dismiss where the plaintiff alleged citric acid

16   functions as a preservative); *Kubilius v. Barilla Am., Inc.*, 2019 WL 2861886, at *4 (N.D. Ill. July

17   2, 2019) (rejecting argument "that plaintiff was required to plead facts indicating that citric acid

18   'functions as a preservative' in defendant's product.") (citing *Quiroz v. Beaverton Foods, Inc.*,

19   2019 WL 1473088, at *8 (E.D.N.Y. Mar. 31, 2019) ("the court agrees that Plaintiff has sufficiently

20   alleged that the citric acid in the Product functions as a preservative such that the label would be

21   misleading to the reasonable consumer.")). For the reasons set forth below, Conagra's Motion to

22   Dismiss should be denied.

23                              **II.    BACKGROUND**

24       Conagra "manufactures, distributes, advertises, markets, and sells a line of canned food

25   products under the Chef Boyardee brand." FAC ¶ 3. "The Chef Boyardee Products at issue include

26   (1.); Chef Boyardee Mac & Cheese Pasta in Cheese Flavored Sauce; (2.) Chef Boyardee Mini

27   ABC's and 123's Pasta in Tomato and Cheese Sauce; (3.) Chef Boyardee Pasta in Butter Sauce;

28   and (4.) Chef Boyardee Spaghetti in Tomato Sauce." *Id.* The labels for the Products prominently

*Pelayo et al. v. Conagra Brands, Inc.*, Case No. 3:23-cv-05833-JD
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

display, in a conspicuous advertising panel at the top of the label, the claim that these Products include '**No Artificial Preservatives**.'" FAC ¶ 12. Plaintiffs allege that this statement is false because the Products "contain citric acid—an artificial preservative used in food products." FAC ¶ 5. A label for one of the Products is shown below:

 

FAC ¶ 14.

Plaintiffs allege that the "citric acid in the Products is an artificial preservative." FAC ¶ 15. "Commercial food manufactures, like Defendant, use a form of citric acid that is derived from heavy chemical processing." *Id.* This chemical processing includes the use of "microbial fermentation with a typically genetically modified type of black mold called *Aspergillus niger*." *Id.* "Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath." *Id.*

Plaintiffs further allege that this artificial citric acid "acts as a preservative when added to food products." FAC ¶ 16. The FDA, USDA, and several academic journals recognize that citric acid functions as a preservative when added to food products. FAC ¶¶ 16-23. Accordingly,

-3-

*Pelayo et al. v. Conagra Brands, Inc.*, Case No. 3:23-cv-05833-JD
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Plaintiffs allege that the "No Artificial Preservatives" statement is false and misleading. FAC ¶¶ 24-25. Plaintiffs cite to survey evidence that foods "bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)." FAC ¶ 24.

Plaintiffs purchased the Products from retail stores in California during the class period and relied on the "No Artificial Preservatives" label when deciding to purchase the Products. FAC ¶¶ 26-28. Plaintiffs seek to represent a class defined as "[a]ll persons who purchased the Chef Boyardee Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated." FAC ¶ 33. Plaintiffs assert claims for (1) violations of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"); (2) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"), and; (3) for breach of express warranty. FAC ¶¶ 45-75.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable

to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Even if the Court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.    ARGUMENT

### A.    Plaintiffs Sufficiently Allege that the Citric Acid in the Products Is an Artificial Preservative

Conagra first argues that Plaintiffs' allegations "do not discuss the citric acid actually contained in the Products." MTD at 4. Not so. The FAC specifically alleges that the "citric acid in the Products is an artificial preservative." FAC ¶ 15. The FAC also explains why the citric acid that Conagra uses in the Products is artificial. Specifically, Plaintiffs allege that it "is manufactured via microbial fermentation with a typically genetically modified type of black mold called *Aspergillus niger*" and the "black mold is fed into a highly processed and/or genetically modified corn syrup to produce citric acid." FAC ¶ 15. Plaintiffs also cite an article that was published in the *Toxicology Reports Journal* explaining the difference between naturally occurring citric acid and the artificial citric acid that Defendant uses in the Products. FAC ¶ 15 n. 3.[1] Specifically, the article states that "citric acid used as a food additive is ***not natural citric acid***; it is manufactured through fermentation using *Aspergillus niger*." Houchin Decl., ¶ 2 & Ex. 1 at p. 1 (emphasis added). The article further explains the following:

> Citric acid naturally exists in fruits and vegetables. However, ***it is not the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive***. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.

*Id.* (emphasis added).

---

[1] A copy of the *Toxicology Reports Journal* article cited in footnote 3 of Plaintiffs' FAC is attached as Exhibit 1 to the concurrently-filed Declaration of Michael T. Houchin in Support of Plaintiffs' Request for Judicial Notice ("Houchin Decl.").

1    The FDA has also sent warning letters to companies stating that certain products labeled

2    as "natural" are misbranded because they contain artificial citric acid as an ingredient. For

3    example, on August 29, 2001, the FDA sent Hirzel Canning Company ("Hirzel") a warning letter

4    regarding its canned tomato products. Houchin Decl., ¶ 3 & Ex. 2. With respect to Hirzel's

5    Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos, the FDA

6    stated that these products could not bear the "All Natural" claim on the label because the products

7    contained a synthetic ingredient, citric acid. *Id.* Similarly, on August 16, 2001, the FDA sent Oak

8    Tree Dairy Farm, Inc. ("Oak Tree") a warning letter regarding its "Oaktree Real Brewed Iced Tea,"

9    "Oaktree Fruit Punch," and "Oaktree All Natural Lemonade" products. Houchin Decl., ¶ 4 & Ex.

10   3. With respect to Oak Tree's "Oaktree Real Brewed Iced Tea," the FDA stated that this product

11   could not bear the "100% Natural" and "All Natural" claims on the label because the product

12   contained a synthetic ingredient, citric acid. *Id.*

13        The Ninth Circuit Court of Appeals, emphasizing the warning letters described above, has

14   issued a pertinent decision as to whether citric acid can be considered an artificial ingredient. In

15   *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (2016) the Ninth Circuit reversed a

16   summary judgment order in favor of a defendant holding there was a genuine dispute as to whether

17   citric acid is an artificial ingredient and whether the defendant's "All Natural Fruit" label was

18   likely to deceive a reasonable consumer. The Ninth Circuit stated:

19        Brazil cited more recent FDA warning letters to food sellers. These sellers had
         described their products as '100% Natural' or 'All Natural,' and the FDA accused
20        those descriptions of being deceptive because the products in question included
         synthetic citric acid, among other substances.
21        ………
22        Taken together, this evidence could allow a trier of fact to conclude that Dole's
         description of its products as 'All Natural Fruit' is misleading to a reasonable
23        consumer. The evidence here—including the conflicting testimony of expert
         witnesses and Dole employees—could also allow a trier of fact to find that the
24        synthetic citric and ascorbic acids in Dole's products were not 'natural.' Summary
         judgment was therefore granted in error.
25

26   *Brazil*, 660 F. App'x at 533–34.

27        The court in *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135 (S.D.N.Y. 2021) reached a similar

28   conclusion when ruling on a motion to dismiss. Like the Plaintiffs here, the plaintiff in *Mason*

-6-

1    alleged that "the citric acid used in the defendant's products is not naturally occurring" and that the

2    defendant "used citric acid fermented by a strain of black mold fungus known as Aspergillus

3    niger." *Mason*, 515 F. Supp. 3d at 140. The court accepted as true the plaintiff's allegations that

4    the defendant uses artificial citric acid in the product holding that "the FDA [warning letters], at

5    minimum, makes the plaintiff's allegations plausible rather than merely possible[,] and as a result,

6    the plaintiff has pleaded adequately that the 'All-Natural' statements are likely to be materially

7    misleading." *Id*. at 144 (internal citation omitted).

8        Other courts are in accord. Whether a particular ingredient is natural or artificial is a

9    question of fact that cannot be resolved on a motion to dismiss. *See, e.g.*, *Holve v. McCormick &*

10    *Co., Inc.*, 334 F. Supp. 3d 535, 546 (W.D.N.Y. 2018) ("Defendant argues that these allegations

11    fall short because Plaintiff has not shown that the citric acid in the Products was synthetic, since

12    citric acid may be natural or synthetic… However, taken as true, and with all reasonable inferences

13    drawn in Plaintiff's favor, these allegations make it plausible that Plaintiff paid an inflated price

14    for Chicken Seasoning Mix labeled as natural which was, in fact, unnatural."); *Boone v. PepsiCo,*

15    *Inc.*, 653 F. Supp. 3d 635, 646 (E.D. Mo. 2023) ("The Court acknowledges that Defendant may

16    very well prove that the tocopherols in the Products are of the non-artificial variety, and therefore

17    its labeling is not false, but such argument is properly resolved on summary judgment or at trial,

18    not in a motion to dismiss."); *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1047 (S.D. Cal.

19    2019) ("Whether Plaintiff is correct that General Mills used the d-l form of malic acid, and whether

20    it used malic acid as a flavoring agent rather than a pH balancing agent are issues of fact that

21    cannot be resolved at the pleading stage."); *Allred v. Frito-Lay N. Am., Inc.*, 2018 WL 1185227,

22    at *5 (S.D. Cal. Mar. 7, 2018) ("Whether malic acid falls into one of these categories is also a

23    factual determination that would be inappropriately resolved on a motion to dismiss.") (collecting

24    authority); *Allred v. Kellogg Co.*, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018); *Noohi v.*

25    *Kraft Heinz Co.*, 2020 WL 5554255, at *4 (C.D. Cal. July 20, 2020); *Daly v. Glanbia Performance*

26    *Nutrition, Inc.*, 2023 WL 5647232, at *6 (N.D. Ill. Aug. 31, 2023).

27        Notably, Conagra does not (and cannot) argue that it uses natural citric acid derived from

28    fruits and vegetables in the Chef Boyardee Products. Even if Conagra did produce evidence that it

-7-

*Pelayo et al. v. Conagra Brands, Inc.*, Case No. 3:23-cv-05833-JD
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

uses natural citric acid, it would be inappropriate to consider such evidence at the motion to dismiss stage. *See Gabriele*, 2015 WL 3904386, at *4 ("Although ConAgra provides an affidavit….attesting to these ingredients being naturally derived, the Court may not look to documents outside of the Complaint at this stage in the litigation, without treating the motion as one for summary judgment. The appropriate time to address these affidavits is on summary judgment. Gabriele's allegations—accepted as true—are that the products contain artificially derived citric acid or calcium chloride, in contravention of federal regulations.") (alteration in original and internal citation omitted). Instead, Conagra resorts to arguing that citric acid derived from *Aspergillus niger* is not artificial. However, this argument is foreclosed at the pleadings stage by the authorities cited above.

Conagra relies on *Osborne v. Kraft Foods Grp., Inc.*, No. 15-cv-02653-VC, slip op. at 5–6 (N.D. Cal. Oct. 15, 2015) and *Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 10, 2019) to argue that Plaintiffs do not adequately allege that the citric acid in the Products is artificial, but those cases are distinguishable. In *Osborne*, the court noted that the plaintiff didn't "specify what type of citric acid Kraft uses in its Capri Sun drinks." *Allred v. Kellogg Co.*, 2018 WL 1158885, at *2. However, Plaintiff in this case "did allege which version" Conagra uses in its Chef Boyardee Products. *Id*; FAC ¶ 15 ("The citric acid in the Products is an artificial preservative"). In *Tarzian*, the plaintiff also failed to allege which type of citric acid the defendant used in its product. *Tarzian*, 2019 WL 5064732, at *4. Courts have distinguished *Tarzian* when a plaintiff— like the Plaintiffs here— specifically allege the type of artificial ingredient used in a product. *See*, *e.g.*, *Noohi*, 2020 WL 5554255, at *3 (distinguishing *Tarzian* because "Plaintiffs have explicitly alleged that Crystal Light contains artificial malic acid."); *Troncoso v. TGI Friday's Inc.*, 2020 WL 3051020, at *9 (S.D.N.Y. June 8, 2020) (distinguishing *Tarzian* because the plaintiff specifically alleged the type of artificial ingredient in the product); *Iglesias v. Arizona Beverages USA, LLC*, 2023 WL 4053803, at *4 (N.D. Cal. June 16, 2023) (same). Accordingly, Plaintiffs have adequately alleged that Conagra uses artificial citric acid in the Products.

**B.**    **Plaintiffs Sufficiently Allege that Reasonable Consumers Are Deceived by the "No Artificial Preservatives" Label Claim**

Conagra next argues that Plaintiffs fail to plausibly allege that reasonable consumers would be misled by the "No Artificial Preservatives" label claim. MTD at 6. In support of this assertion, Conagra largely repeats its argument that citric acid produced by *Aspergillus Niger* is not artificial. MTD at 7-11. Conagra also argues that citric acid produced with *Aspergillus Niger* would not mislead a reasonable consumer and reasonable consumers would not share Plaintiffs' beliefs about its labeling. MTD at 11-14.  However, whether a label statement is likely to mislead a reasonable consumer "will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams*, 552 F.3d at 938; *see also Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (holding that whether a label statement is likely to mislead a reasonable consumer "raises questions of fact that are appropriate for resolution on a motion to dismiss only in 'rare situation[s].'"). Each of Conagra's arguments will be addressed below.

**1.**    **Plaintiff Plausibly Alleges that Citric Acid Produced with** *Aspergillus Niger* **Is Artificial**

As discussed in detail above, Plaintiffs' FAC clearly alleges why citric acid produced with *Aspergillus Niger* is artificial. FAC ¶ 15. Conagra attempts to dispute these allegations by arguing that federal regulations show that citric acid is natural. However, Conagra misinterprets relevant FDA regulations. And, in any event, "[t]he FDA's views, while relevant, are not dispositive on" the question of whether a reasonable consumer would be misled by the label statement. *Mason*, 515 F. Supp. 3d at 144 (citing *Ault v. J.M. Smucker Co.*, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014) and *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) ("[T]he FDA's and USDA's respective policies concerning 'natural,' while potentially relevant, are not controlling.")); *see also Morales v. Kraft Foods Grp., Inc.*, 2016 WL 11743532, at *21 (C.D. Cal. Dec. 2, 2016) (noting that FDA "guidance is not dispositive as to whether a reasonable consumer views artificial coloring agents such as annatto extract or titanium oxide to be inconsistent with a 'natural' label.").

Conagra cites 21 C.F.R. § 184.1033(a) for the proposition that the FDA considers citric acid to be natural. However, that regulation simply notes that citric acid "is a naturally occurring ***constituent of plant and animal tissues***." *Id*. (emphasis added). In other words, citric acid can occur naturally when it is a constituent of plant and animal tissues— i.e. by extracting it from lemons. The same regulation goes on to state that citric acid may also be produced "by the solvent extraction process described in § 173.280 of this chapter for the recovery of citric acid from Aspergillus niger fermentation liquor." *Id*. 21 C.F.R. § 173.280 goes onto to describe the solvent extraction process from *Aspergillus niger* and notes that synthetic substances are used in the manufacturing process and that synthetic residues are leftover in the final product:

> (a) The solvent used in the process consists of a mixture of n- octyl alcohol meeting the requirements of § 172.864 of this chapter, ***synthetic*** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine.
> ….
>
> (d) Residues of n- octyl alcohol and ***synthetic*** isoparaffinic petroleum hydrocarbons are removed in accordance with good manufacturing practice. Current good manufacturing practice results ***in residues*** not exceeding 16 parts per million (ppm) n- octyl alcohol and 0.47 ppm ***synthetic*** isoparaffinic petroleum hydrocarbons in citric acid.
>
> (e) Tridodecyl amine may be present ***as a residue*** in citric acid at a level not to exceed 100 parts per billion.

21 C.F.R. § 173.280 (emphasis added). Accordingly, the FDA regulations recognize the difference between naturally occurring citric acid that is a "constituent of plant" tissues like lemons and artificial citric acid that is produced by *Aspergillus niger* using synthetic chemicals. 21 C.F.R. § 184.1033(a); 21 C.F.R. § 173.280. Plaintiffs' interpretation of these regulations is also consistent with the FDA's actions. As discussed above, the FDA has sent warning letters to food manufactures who included citric acid in products labeled as "natural." Houchin Decl., ¶¶ 3-4 & Exs. 2-3.

Conagra also cites to 7 C.F.R. § 205.605(a)— a USDA regulation. MTD at 7. However, this regulation is inapplicable because it only applies to products that bear an "organic" label. The Products at issue here are not labeled as "organic." FAC ¶ 14. Accordingly, the FDA regulations discussed above are relevant to the Products at issue here. The FDA regulations recognize that

-10-

citric acid produced from *Aspergillus niger* uses a synthetic process. 21 C.F.R. § 173.280. The USDA regulations are also not dispositive as to whether the label claim is likely to mislead a reasonable consumer. *See Mason*, 515 F. Supp. 3d at 144

Conagra also discusses the distinction between L-malic acid and D-malic acid. MTD at 8-9. However, this distinction has no relevance here. The Products are not alleged to contain malic acid and Conagra cannot credibly argue that L-malic acid is produced in the exact same manner as citric acid derived from *Aspergillus niger*. Conagra also argues that "the very sources Plaintiffs use to support their FAC expressly contradict Plaintiffs' allegation that citric acid produced via microbial fermentation is 'artificial.'" (MTD at 9), but that is misleading. The sources Conagra references simply note that citric acid can be produced naturally by extracting it from fruits like lemons. In contrast, the FAC clearly alleges that the citric acid used in the Products is artificial because it "is manufactured via microbial fermentation with a typically genetically modified type of black mold called *Aspergillus niger*." FAC ¶ 15. The FAC cites sources that unequivocally state that citric acid produced from *Aspergillus niger* is artificial. *See* Houchin Decl., ¶ 2 & Ex. 1 ("citric acid used as a food additive is ***not*** natural citric acid; it is manufactured through fermentation using Aspergillus niger.") (emphasis added).

### 2.   *Plaintiffs Plausibly Allege that Using Artificial Citric Acid in Products Labeled as Containing "No Artificial Preservatives" Would Deceive Reasonable Consumers*

Conagra next argues that reasonable consumers would not be misled by citric acid produced with *Aspergillus Niger* because it has an "identical molecular makeup" as citric acid derived from citrus fruits. MTD at 10-13. This argument overlooks Plaintiffs' allegations that "[c]onsumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath." FAC ¶ 15. This is because byproducts can be leftover in the final product when citric acid is produced by *Aspergillus Niger*. For example, the *Toxicology Reports Journal* article cited in the FAC notes that "the potential presence of impurities or fragments from the *Aspergillus niger* in

-11-

*Pelayo et al. v. Conagra Brands, Inc.*, Case No. 3:23-cv-05833-JD
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

[manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested." Houchin Decl., ¶ 2 & Ex. 1. The article further explains:

> Given the thermotolerance of A. niger, there is great potential that byproducts of A. niger remain in the final [manufactured citric acid] product. Furthermore, given the pro-inflammatory nature of A. niger even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies.

Houchin Decl., ¶ 2 & Ex. 1 at p. 9. The FDA regulations also note that certain levels of chemical byproducts may remain in citric acid that is produced from *Aspergillus Niger*. 21 C.F.R. § 173.280. Accordingly, citric acid produced by *Aspergillus Niger* is not the same as natural citric acid because it contains chemical byproducts that can cause unwanted health and allergy problems. Whether or not a product is healthy is material to a reasonable consumer.

Defendant also relies on the Second Circuit's opinion in *Baines v. Nature's Bounty (NY), Inc.*, 2023 WL 8538172, at *2 (2d Cir. Dec. 11, 2023), but that case is distinguishable. In that case, the Plaintiffs alleged that a product labeled as containing "fish oil" was deceptive because "it has undergone a transformation at a molecular level: Although derived from natural fish oil, the supplement has been esterified, meaning that the omega-3s in the fish oil have been changed from their naturally occurring triglyceride form to ethyl-ester form." *Id.* at *2. The *Baines* court held that the complaint "does not contain factual allegations that make it plausible that a reasonable consumer reading 'fish oil' on the front label of Defendants' product would be misled into thinking the supplement only contains omega-3s in triglyceride form." *Id.* The court went on to state: "[t]he complaint alleges in a conclusory fashion that consumers care about the distinction between triglyceride and ethyl-ester omega-3s, but it does not provide any supporting allegations that make it plausible that consumers who purchase Defendants' product are actually thinking about the molecular form of their fish-oil-derived omega-3s at all." *Id.*

Unlike in *Baines*, Plaintiffs do allege that reasonable consumers would care about the distinction between natural citric acid and artificial citric acid produced by *Aspergillus Niger* because artificial citric acid can cause adverse health effects. FAC ¶ 15. Moreover, Plaintiffs cite to research showing that consumers place importance on "free-from" claims— such as "No

Artificial Preservatives"— because consumers "perceive the products as closely tied to health." FAC ¶ 24. Accordingly, a reasonable consumer would be deceived by a "No Artificial Preservatives" label when the products contain an artificial preservative ingredient that can cause negative health effects. FAC ¶ 15.

Courts routinely find it plausible that reasonable consumers could be misled by "free-from" claims like "No Artificial Preservatives." *See*, *e.g.*, *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1147–48 (S.D. Cal. 2021) ("The Court finds that Plaintiffs plausibly plead that a reasonable consumer could be misled by advertising products as not containing artificial additives or preservatives where the products contain ingredients that Plaintiffs allege are additives or preservatives."); *Tatum v. Kraft Heinz Co.*, 2023 WL 5804252, at *3 (N.D. Ill. Sept. 7, 2023) ("Defendant's Crystal Light Pure products contain labels which expressly state that the products contain 'no artificial sweetener, flavors, or preservatives.' The Court finds that such affirmative statements are likely to mislead reasonable consumers seeking products free from artificial flavors."); *Hayes v. Gen. Mills, Inc.*, 2021 WL 3207749, at *4 (N.D. Ill. July 29, 2021) ("the Court finds that Hayes has adequately alleged that the malic acid in the Products functions as a flavor, and that the 'no artificial flavors' statements on the Products' labels could be deceptive to a reasonable consumer."); *Bates v. Kashi Co.*, 2012 WL 12847001, at *9 (S.D. Cal. July 16, 2012) ("Plaintiffs allege… that reasonable consumers understand 'All Natural' and 'Nothing Artificial' to mean that no synthetic or artificial ingredients are included, that reasonable consumers lack the means to verify the truthfulness of those claims, and that, after relying on the labels, a reasonable consumer would not expect any artificial or synthetic ingredients in Kashi Company's products. This is not the 'rare situation' where granting a motion to dismiss Plaintiffs' UCL, FAL, or CLRA causes of action is appropriate."); *Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1328 (S.D. Cal. 2019) ("If it is determined at a later stage in this litigation that Plaintiffs are correct and Talking Rain should disclose its Products contain an 'artificial flavor,' then it follows that a reasonable consumer would likely be deceived by the Sparkling Ice's label which states 'Naturally Flavored Sparkling Water.'"). Therefore, the court should accept as true at this stage that the "No Artificial Preservatives" label is likely to mislead a reasonable consumer.

1

2

### 3.   Reasonable Consumers Would Share Plaintiffs' Beliefs About the Label Statements

3   Conagra argues that "because FSIS[2] pre-approved the bulk of the Chef Boyardee product

4   line (meaning claims against those products are federally preempted), a reasonable consumer

5   would expect all Chef Boyardee products—including the Products at issue—to be labeled

6   consistently and compliant federal regulations." MTD at 14. This argument is a red herring. As

7   Conagra notes, "the original Complaint challenged first certain Chef Boyardee products' labeling

8   claims that they contained 'No Preservatives'" and Conagra argued that those labels were approved

9   by the FSIS. MTD at 14. However, the FAC challenges *different* Chef Boyardee products that

10  claim to contain "No Artificial Preservatives." FAC ¶ 14. Because Plaintiffs have filed an amended

11  complaint, the original complaint must be treated as non-existent. *See Burchfield v. Corel Corp.*,

12  2013 WL 12120088, at *1 (N.D. Cal. Sept. 12, 2013) ("An 'amended complaint supersedes the

13  original complaint, and the original complaint is treated as non-existent.'") (quoting *Appling v.

14  Serv. Mgmt. Sys., Inc.*, 2007 WL 127973 at *1 (E.D. Cal. Jan. 12, 2007)).

15  Conagra does not argue that the Products at issue in the FAC were approved by the FSIS

16  or any governmental agency. In fact, the FSIS does ***not*** approve "negative claims" like "No

17  Artificial Preservatives." *See* 9 CFR § 412.1(e)(2)(ii); 88 FR 2798-01 (noting that "negative

18  claims" are subject to a generic approval process). In any event, the Products at issue in the FAC

19  are not subject to FSIS approval because they do not contain meat and Conagra does not argue

20  otherwise. Instead, Conagra argue that the "'No Artificial Preservatives' claim at issue here is

21  narrower than the FSIS-approved meat-containing products' labeling that the products 'No

22  Preservatives' at all" and that reasonable consumers would not reach the conclusion "that the

23  broader claim on the meat-containing products is not misleading, but the narrower claim on the

24  Products at issue in the FAC somehow is." MTD at 14-15. However, Plaintiffs dispute that the

25  FSIS ever "approved" the products in the original complaint as not misleading. Conagra also

26  overlooks a key distinction between the products in the original complaint and the Products at

27

28  _____

[2] "FSIS" refers to the Food Safey Inspection Service of the United States Department of Agriculture.

issue in the FAC. There is no real dispute that citric acid functions as a preservative in the Products at issue in the FAC. For example, the ingredient list on the label of the Chef Boyardee Mac & Cheese states that it contains "citric acid [for freshness]." FAC ¶ 14. The "for freshness" statement undoubtedly indicates that citric acid functions as a preservative and Conagra does not argue otherwise. Instead, Conagra's entire motion focuses on whether the citric acid in the Products is natural or artificial. Whether or not the meat containing products were approved by the FSIS simply has no bearing on whether the non-meat Products at issue now are misleading to a reasonable consumer.  The FAC alleges that Plaintiffs are reasonable consumers were misled by the "No Artificial Preservatives" label claim (FAC ¶¶ 24-28) and these allegations should be accepted as true at the motion to dismiss stage.

## V.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss should be denied. If the Court dismisses any portion of the complaint, Plaintiffs respectfully request leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Stardock Sys., Inc. v. Reiche*, 2019 WL 8333514, at *4 (N.D. Cal. May 14, 2019) ("Upon dismissal of a claim or complaint, leave to amend should be 'freely given.'") (quoting Fed. R. Civ. P. 15(a)(2)).

Dated: February 26, 2024                    CROSNER LEGAL, P.C.

By:    */s/ Michael T. Houchin*
MICHAEL T. HOUCHIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
mhouchin@crosnerlegal.com
*Attorneys for Plaintiffs and the Proposed Class*